*NOT FOR PUBLICATION*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MARGARET TEMPLE,<br><br>Appellant,<br><br>v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security<br><br>Appellee. | Civil Action No. 19-19243 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge**:

Appellant Margaret Temple ("Appellant" or "Temple") challenges Social Security Administration Commissioner Andrew Saul's ("Appellee" or "Commissioner") determination that she is not eligible for Disability Insurance Benefits ("DIB") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. Because substantial evidence supports the Administrative Law Judge's ("ALJ") determination, this appeal is **DISMISSED.**

I.      **BACKGROUND AND PROCEDURAL HISTORY**

   A.  *The Medical Records*

On August 28, 2014, Temple filed for DIB with the Social Security Administration ("SSA"), alleging a disability that began around January 2012, when she tripped on a mat at work and fell "head first into a concrete wall." *See* Administrative Record ("A.R.") 11, 345. Temple returned to her job as an administrative clerk for Catholic Charities in March of that year, managing her pain with a combination of muscle relaxants, anti-inflammatories, and Neurotin. *See* A.R. 457. A lumbar MRI conducted in May showed multi-level degenerative changes to her spine, a cervical

MRI showed a herniated disc, and an electromyogram showed nerve damage in her wrist. *Id.* 429, 431. Temple underwent a cervical discectomy in August 2012 to repair the herniation, *id.* 388, 432, after which she was "generally doing well" despite swelling in her neck. *Id.* 357. Prior to her accident, Temple had undergone a discectomy and facetectomy, *id.* 433, which involved decompressing damaged discs along her spine, and a laminectomy, where a herniated disc in her thoracic spine "could not be corrected because it was too close to [the] spinal cord." *Id.* 54. Temple's fall exacerbated "her baseline pain" from these preexisting injuries. *Id.* 423.

Through 2013, Temple continued to manage her pain with Neurontin, which doctors said provided "quite a bit of relief." *Id.* 314. The Orthopedic Spine Institute observed that she could stand up without difficulty and walk with a normal gait. *Id.* 304. Examinations in 2014 likewise showed no walking impairments, *id.* 467, 470, and Temple felt "well" around this time, *id.* 467, 469, even though she had developed reduced lumbar spine flexion, *id.* 498, 501, 504, peripheral polyneuropathy, *id.* 306, and carpel tunnel syndrome. *Id.* 304. Through 2017, Temple reported that her pain remained under control, maintained a normal gait, and continued to stand up without difficulty. *Id.* 604, 621, 625, 647-664.

Three doctors examined Temple in connection with her injuries. *See id.* 438-44. Dr. Vijaykumar Kulkarni conducted his examination on January 13, 2014, after Temple filed for worker's compensation. He concluded that Temple is totally disabled. *Id.* 443. Dr. Betty Vekhnis examined Temple on December 16, 2014. *Id.* 488. Although Dr. Vekhnis determined that Temple has a history of cervical fusions, neck and lower back pain, radicular pain, and difficulty using her hands repetitively, she did not offer an opinion as to whether Temple is disabled, nor did she draw any conclusions about the extent to which Temple's impairments functionally limit her ability to work. Temple's regular pain management specialist, Eric Freeman, partially completed a medical

source statement, indicating that Temple has a limited ability to lift, carry, sit, stand, and walk. But, like Dr. Vekhnis, Dr. Freeman did not draw a conclusion as to Appellant's functional capacity. *Id.* 495. Mohammad Rizwan, a doctor with the state agency that evaluated Temple's worker's compensation claim, reviewed Temple's medical records in July 2015. He concluded that Temple is able to lift and carry twenty pounds occasionally and ten pounds frequently, stand or walk for five out of eight hours, and sit for six out of eight hours, which is consistent with the SSA's definition of light work. *Id.* 82-83. After an extensive evaluation, physical therapist Timothy Hatt similarly found that Temple can perform light work. *Id.* 335.

    *B.   The Testimonial Record*

In connection with her application for DIB, Temple testified as to her daily routine and physical limitations. *See* A.R. 32-60. Generally, Temple stated that she is "always in pain" in her neck, down her back and left leg, into her foot, where she feels numbness, in both wrists, and in her fingers when she tries to grasp things. *Id.* 34, 41-42, 45, 56-59. To "somewhat subside" the pain she takes Vicodin four times daily, as well as a muscle relaxer, the combination of which causes tiredness and irritability, prevents her from driving, *id.* 62, and causes her to fall asleep while reading or watching TV. *Id.* 42-44. She stated that she cannot turn her head more than forty-five degrees or repetitively. *Id.* 48-49.

In terms of daily activities, Temple shops, but only lightly. *Id.* 36-37. She cleans the house, but only "surfaces." *Id.* 37, 49. She used to help her husband mow the lawn, but "can't do that anymore." *Id.* 49. She cooks only simple meals and does not garden. *Id.* She sleeps in her bed now, but used to sleep in a recliner on the first floor of her house because "it was too tough going up the stairs." *Id.* 52, 63. Temple can write for "about ten minutes" before her fingers feel numb, but the numbness subsides shortly thereafter. *Id.* 45. Even so, she has difficulty doing repetitive things

3

with her hands, *id.* 46, 59, like typing for longer than thirty minutes, *id.*, opening a jar, *id.* 50, or fastening buttons. *Id.* She "used to have hobbies, but not anymore . . . . [e]ver since I hurt my back." *Id.* For the same reason, she is unable to lose weight, is "lucky" if she can walk a block, although she visits her in-laws nearby, *id.* 39, and cannot sit for longer than an hour. *Id.* 55. She does not go to church or volunteer. *Id.* 38. Despite her pain, Temple is able to read for short periods of time, do crossword puzzles, bathe herself, although she keeps her hair short so that she is able to reach behind her head to wash it, *id.* 51, and do laundry with some help from her daughter, including carrying the laundry basket up and down the stairs. *Id.* 37-38, 51, 53.

C.   *The ALJ's Findings*

The state agency responsible for making disability determinations denied Temple's claim for worker's compensation on January 7, 2015. *See* A.R. 14, 89-93, 96-98; Mot. to Remand, at 2. Temple then applied for DIB with the SSA. After a hearing on March 13, 2018, the ALJ determined that, although Temple has degenerative disc disease and is obese, she is not eligible for DIB. *See* A.R. 11-20. The ALJ did not credit the medical opinions of Drs. Kulkarni, Vekhnis, and Freeman, instead granting "significant weight" to the state medical consultant and physical therapist. *Id.* The ALJ also did not credit Temple's testimony as to her chronic pain and fatigue, and the side effects of her pain medication, which he deemed to be inconsistent with the medical evidence. *Id.* 18. In making these determinations, the ALJ applied the standard five-step process outlined in 20 C.F.R. § 404.1520. *See infra*. The Appeals Council rejected Temple's request for review on September 4, 2019, *see* A.R. 1-6, and the ALJ's decision was adopted as the Commissioner's final decision.

Temple now appeals, arguing that the ALJ "discounted and ignored relevant probative evidence . . . rejected the medical opinions of the treating physicians regarding the nature and severity of [her] impairments," and did not properly question the vocational expert, who testified

that Temple could perform her past relevant work as an administrative clerk, as that job is defined in the Dictionary of Occupational Titles ("DOT"). Mot. to Remand, at 2, 5. The Commissioner opposes Temple's motion.

## II.     STANDARD OF REVIEW

In order to qualify for DIB, a person must be disabled, as defined by the Social Security Act and subsequent regulations. Title XVI of the Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Using this definition, the SSA applies a five-step test to determine whether a person is disabled. *See* 20 C.F.R. § 404.1520; *Sullivan v. Zebley*, 493 U.S. 521, 526 (1990); *Williams v. Sullivan*, 970 F.2d 1178, 1181 (3d Cir. 1992).

At Step one, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity," 20 C.F.R. § 404.1520(a), as defined in the regulations. *See* 20 C.F.R. § 220.141. If so, her application is denied. *See Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If not, at Step two, the claimant must show that she suffers from a "severe impairment" or "combination of impairments," 20 C.F.R. § 404.1520(c); *Bowen*, 482 U.S. at 146-47 n.5, which limits her ability to do "basic work activities" such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 404.1521(b). If her impairment is severe, then at Step three the claimant must demonstrate that her disability meets or equals an impairment listed in 20 C.F.R. Pt. 404, App. 1 ("Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). Here, the ALJ often enlists experts to explain relevant medical evidence. *See, e.g.*, *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002). If the impairment meets or equals a listed impairment, then the claimant is

considered disabled *per se* and ALJ's inquiry ends. *See Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). But if the claimant fails to show that her disability meets a listed impairment, then at Step four she must demonstrate that she lacks sufficient residual functional capacity to perform past relevant work. 20 C.F.R. § 404.1520(e). Residual functional capacity is defined as "what a [claimant] can still do despite his limitations." 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof. *See Plummer*, 186 F.3d at 428. If the claimant is able to perform past work, then she is not considered disabled. *See Bowen*, 482 U.S. at 141-42. However, if she shows that she cannot perform such work, then the ALJ continues to Step five. At this step, the burden shifts to the Commissioner to show that the claimant can perform "other work." 20 C.F.R. § 404.1520(f). "Other work" consists of jobs that exist in significant numbers in the national economy, which the claimant can perform given her age, education, past work experience, and residual functional capacity, as determined by the ALJ. *Id.*; *Plummer*, 186 F.3d at 428. The ALJ often seeks testimony from a vocational expert on this point. *Plummer*, 186 F.3d at 428. "In addition, the ALJ generally consults the DOT, a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Burns*, 312 F.3d at 119. If the Commissioner fails to meet this burden, then the claimant is entitled to benefits.

On review, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions on factual questions are conclusive if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While a court must examine the record in its

entirely to determine whether the Commissioner's findings are supported by substantial evidence, *see Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard of review is deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Specifically, "substantial evidence" is "more than a mere scintilla" but less than a preponderance, *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004); *Jesurum v. Sec'y of the United States Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995), *i.e.*, "such relevant evidence as a reasonable mind might accept as adequate." *Plummer*, 186 F.3d at 427; *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). A district court therefore is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder," *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993), or reverse the Commissioner's decision even if there is evidence in the record that would justify a different conclusion. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Finally, a reviewing court may not "conduct its own independent analysis" of the record. *Kitchen v. Astrue*, 2012 WL 375250, at *3 (M.D. Pa. 2012) ("[T]he Third Circuit Court of Appeals [has] stated that the District Court should not conduct its own independent analysis when the ALJ fails to mention certain evidence and fails to consider all relevant and probative evidence."); *see also Fargnoli v. Massanari*, 247 F.3d 34, 44 n. 7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corporation*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.'").

### III.  DISCUSSION

In the present case, at Step one, the ALJ found that Appellant has not worked since the onset of her alleged disability. *See* A.R. 16. At Steps two and three, the ALJ found that Appellant has "severe" impairments, including degenerative disc disease and obesity, but that they neither singly, nor in combination, met a listed impairment. *See* A.R. 16-17. In evaluating Appellant's limited functional capacity at Step four, the ALJ determined Appellant's physical impairments limit her to light work, *see* A.R. 17-19, but that limitation does not preclude Appellant from performing her past relevant work as an administrative clerk. *See* A.R. 19-20. Because the ALJ concluded at Step four that Appellant is capable of performing past work, he did not proceed to Step five, and Appellant was deemed not disabled. *See* A.R. 20. Appellant raises two issues on appeal. With respect to the ALJ's determination of her residual functional capacity, Appellant argues that the ALJ "use[d] the record to arrive at his own conclusion [and] rejected all of the medical source statements regarding [her] limitations." Mot. to Remand, at 11. With respect to the hypothetical on which the ALJ relied to elicit vocational expert testimony, Appellant argues that the ALJ failed to include "all credible, established limitations." *Id.* at 17.

### A.  *The ALJ's Determination of Appellant's Residual Functional Capacity*

Appellant takes issue with the ALJ's assessment of her residual functional capacity, arguing first that there is insufficient evidence to support the finding that she can perform light work. Opp. Br., at 9. An ALJ's determination of a claimant's residual functional capacity must be based on all of the relevant evidence, including the claimant's subjective symptoms. *See* C.F.R. §§ 404.1546(c), 404.1545(a). However, "the ALJ need only include . . . those limitations which he finds to be credible." *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x. 140, 147 (3d Cir. 2007). "Where a limitation is supported by some medical evidence but controverted by other evidence in

the record," as here, "it is within the ALJ's discretion whether to submit the limitations." *Zirnak*

*v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014). The SSA defines work as "light" when it:

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range or light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). The SSA has also explained that "light work generally requires the ability

to stand and carry weight for approximately six hours of an eight hour day." *Jesurum*, 48 F.3d at

119 (citing Social Security Ruling 83-10).

In this matter, the ALJ determined that Appellant has stable motor function, no difficulty

ambulating, no walking impairment, sufficient leg strength, sufficient hand strength, and

manageable pain. *See* A.R. 18l; *see* A.R. 294, 362, 388, 432, 467, 470, 488-90, 644-64.  As the

ALJ clearly explained, Appellant's pain was stable in May 2013, *see* A.R. 18, 294, Appellant had

full strength and no walking impairment in August and September 2014, *id.* 18, 467, 470,

Appellant was able to walk without an assistive device, pass a straight leg raise test, and stand on

her heels in December 2014, *id.* 488-89, and Appellant had full strength, a normal gait, and no

difficulty ambulating in 2017. *Id.* 644-64. The ALJ further based Appellant's functional limitations

on the opinion of the state medical consultant, Dr. Rizwan, who determined that Appellant could

perform activities consistent with the SSA's definition of light work. *Id.* 18. State experts such as

Dr. Rizwan deserve particular deference. *See infra*.

The ALJ also relied on Appellant's own testimony. *See* A.R. 17-19; *Brown*, 649 F.3d at

197 ("An ALJ must give 'subjective complaints serious consideration.'") (quoting *Burns v.*

*Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) (further citations omitted)). For example, Appellant

testified that she can prepare simple meals, do light laundry, vacuum, do light shopping, watch

TV, read, do crossword puzzles, walk to visit relatives nearby, talk on the phone, walk for short periods of time, go up and down stairs, sometimes while carrying weight, and type for short periods of time. *Id.* 19, 45-60, 264-70. While "sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity," *Fargnoli*, 247 F.3d at 40; *Jesurum*, 48 F.3d at 119, Appellant's activities are routine and daily, and as such, consistent with an ability to perform light work.

Despite the above-referenced evidence supporting the ALJ's residual functional capacity determination, Appellant takes issue with how the ALJ weighed the opinions of Drs. Kulkarni, Vekhnis, and Freeman, *see* Opp. Br., at 4-5, arguing that the ALJ "selectively considered" their reports. *Id.* at 9. As the finder of fact, the ALJ must evaluate all medical opinions in the record under the factors set forth in the regulations, resolve any conflicts, and determine how much weight to give to each opinion. *See* 20 C.F.R. § 416.927(b)-(c). However, "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining" a claimant's residual functional capacity, *Titterington v. Barnhart*, 174 F. App'x. 6, 11 (3d Cir. 2006), nor that an ALJ adopt the medical opinion of the treating physicians. *See, e.g.*, *Jones*, 954 F.2d at 129; *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990); *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). And while "the ALJ is responsible for making [a residual functional capacity] determination based on the medical evidence," he "is not required to seek a separate expert medical opinion" to justify his ultimate decision. *Mays v. Barnhart*, 78 Fed. App'x. 808, 813 (3d Cir. 2003). Thus, if a treating physician's opinion conflicts with other evidence in the record, then the ALJ is entitled to accord it less than controlling weight or outright reject it. *Morales*, 225 F.3d at 317 (citing *Plummer*, 186 F.3d at 429); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988); *see also Kent v. Schweiker*, 710 F.2d at 115 (3d Cir. 1983).

The ALJ must also explain his reasons for crediting or rejecting any medical opinion. *See Johnson*, 529 F.3d at 203; *Cotter*, 642 F.2d at 706-707; C.F.R. § 404.939 (noting an ALJ's decision must be in writing and contain findings of fact and a statement of reasons). The Third Circuit has "long been concerned with ALJ opinions that fail properly to consider, discuss and weigh relevant medical evidence." *Fargnoli*, 247 F.3d at 42; *see also Dobrowolsky v. Califano*, 606 F.2d 403, 406-07 (3d Cir. 1979) ("This Court has repeatedly emphasized that the special nature of proceedings for disability benefits dictates care on the part of the agency in developing an administrative record and in explicitly weighing all evidence."). Where there are conflicting medical opinions, as here, the Third Circuit "recognize[s] a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided." *Fargnoli*, 274 F.3d at 42; *Cotter*, 642 F.2d at 706; *see also Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). Put another way, "unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Gober*, 574 F.2d at 776 (quoting *Arnold v. Sec'y of Health, Ed. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977) (internal quotations omitted)); *see also Guerrero v. Comm'r of Soc. Sec.*, No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19, 2006) ("The ALJ's responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it."), *aff'd*, 249 Fed. App'x. 289 (3d Cir. 2007). Courts must, in short, look for a "clear and satisfactory explanation of the substantial basis on which" an ALJ's determination rests. *Torres v. Comm'r of Soc. Sec.*, No. 14-6178, 2015 WL 8328346, at *8 (D.N.J. Dec. 8, 2015).

I turn now to the present case. Drs. Vekhnis, Kulkarni, and Freeman indicated that Appellant suffers from various impairments and pain, which, according to Appellant, support more a severe functional limitation. Appellant takes issue with the reasons why the ALJ "granted little weight" to these treating doctor's opinions, *id.* 19, and instead, the ALJ granted "significant weight" to the opinions of the state medical consultant and the physical therapist, *id.* 19, who determined that, despite her impairments and pain, Appellant could perform light work, *see* Ex. 2F, and stand or walk for up to six hours. *See* Ex. 1A, 5A. As a preliminary matter, I question whether the medical opinions in this case are contradictory, and note the general agreement as to both the nature and severity of Appellant's impairments. Dr. Vehknis does not offer any opinion as to Appellant's limitations, but her findings are consistent with three years of treatment notes from the Orthopedic Spine Institute; to the extent that Dr. Freeman offers an opinion, which is far from certain, he omits critical information that would enable the Court to review its probative value or determine with whom he agrees; Dr. Kulkarni's opinion is based in large part on evidence showing Appellant has a normal gait and strength, and stable pain, even though his ultimate conclusion is inconsistent with that evidence; and physicians at the Orthopedic Spine Institute regularly observed that Appellant maintains a normal gait and strength, and a stable pain level. Appellant overstates the extent to which there is conflicting medical evidence.

Assuming such a conflict exists, I assess whether the ALJ relied on substantial evidence in rejecting or crediting each expert's opinion. Dr. Vekhnis' "impression" was that Appellant has "a history of cervical fusion . . . neck and low back pain, radicular pain . . . . [and] difficulty with repetitive use of the hands." Opp. Br., at 9; A.R. 489. Dr. Vekhnis did not extrapolate from this impression, nor did she offer an assessment of Appellant's workplace abilities, exertional capacity, or functional limitations. Her report largely describes Appellant's prior medical history, *see* A.R.

488, much of which is contradicted by other medical evidence in the record, as the ALJ noted. For instance, despite Appellant's history of back pain and cervical fusions, a 2012 MRI of her cervical spine found "no compression fracture," vertebrae "normal in height," and "no significant subluxation." *Id.* 427. Similar examinations conducted throughout 2012 and 2013 found "no motor weakness," *id.* 307, strength "grossly intact," *id.*, "motor strength within normal limits," *id.* 309, that Appellant "is able to go from a seated to a standing position without any difficulty . . . . to get on her heels and toes without any difficulty, [and to] walk[] with a normal gait," *id.* 312, and that Appellant could "return to work in a light-duty capacity with lifting restrictions of 25 pounds." *Id.* 423-24; 427. A 2014 examination likewise found Appellant to have a "normal gait" and to be "able to stand on heels and toes and do a shallow squat." *Id.* 73. In this examination, Appellant's cervical spine was observed to be "unremarkable," and Appellant could "flex to 60 degrees." *Id.* After administering a number of tests in 2015, the Orthopedic Spine Institute again found no evidence of a back-related disability, "cervical neuropathy," or "definitive upper extremity nerve entrapment," *id.* 306, and Appellant "denie[d] any weakness." *Id.* 304.

Dr. Vehknis also examined Appellant directly. Her findings appear to be identical to the ALJ's residual functional capacity determination, as well as other evidence in the record supporting Appellant's ability to perform light work, despite Appellant's contention to the contrary. For example, Dr. Vehknis found that Appellant "walked into the office without an assistive device . . . was able to stand on toes . . . squat . . . [and] stand on heels." *Id.* 488. Observing Appellant's cervical spine, she found "no vertebral tenderness, no spasm," and that Appellant's "range of motion was functional." *Id.* 489. Likewise, observing Appellant's legs and shoulders, Dr. Vehknis found "full range of motion . . . no focal weakness, [and] no sensory loss." *Id.* Appellant points to Dr. Vekhnis' opinion that Appellant has difficulty repetitively using her hands,

which, if credited, would tend support a more serious functional limitation. Mot. to Remand, at 9.

A manipulative limitation is both rarely emphasized in the record and far from uncontroverted: Dr.

Freeman, Appellant's regular pain management specialist and treating physician, found that

Appellant has "no limitation" with respect to "handling objects." *Id.* 495. The ALJ was therefore

entitled to discount Dr. Vehknis' opinion.

Next, I turn to Dr. Freeman, who partially completed a medical source statement. In that

statement, Dr. Freeman indicated that Appellant is limited in her ability to lift, carry, stand, walk,

sit, push, and pull. *Id.* 19; 495. Dr. Freeman did not, however, specify the extent to which Appellant

is limited with respect to each work-related activity, despite being asked to do so. *Id.* 495. To the

extent that he omitted such information, his opinion is neither consistent nor inconsistent with the

opinions of the state consultant and physical therapist. In any event, Dr. Freeman completed

nothing more than a check-box evaluation, which is weak evidence. *See, e.g.*, *Mason v. Shalala*,

994 F.2d 1058, 1065 (3d Cir. 1993); *Zonak v. Commissioner of Social Security*, 290 F. App'x. 493,

497 (3rd Cir. 2008) (finding that ALJ did not err when the ALJ rejected the opinion of a treating

physician because the physician's opinion was provided in a checkbox format); *Griffies v. Astrue*,

855 F. Supp. 2d 257, 270 (D. Del. 2012) (remanding an ALJ's decision that heavily relied upon

the treating physician's checked-boxes opinion). The law is also "clear . . . that the opinion of a

treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649

F.3d 193, 197 n.2 (3d Cir. 2011); *Chandler*, 667 F.3d at 361. The ALJ was therefore entitled to

discount Dr. Freeman's opinion.

Finally, in evaluating Appellant for her worker's compensation claim, Dr. Kulkarni

concluded that Appellant is totally disabled. *See id.* 19, 438-43. The Court first disagrees that Dr.

Kulkarni's diagnoses, *see id.* 443, rationally lead to the conclusion "that [Appellant] is totally

disabled as a functional unit." *Id.* For instance, one such diagnosis—"decompression of the spinal cord and nerve roots at T7 and T8"—developed after an accident in 1999, yet Appellant worked for over a decade thereafter, including as an administrative clerk for Catholic Charities, while effectively managing her chronic pain. Similarly, Dr. Kulkarni explicitly relied on treatment records and progress notes which themselves are consistent with an ability to perform light work, and on the basis of which other doctors reached a far less extreme conclusion as to Appellant's impairments and limitations. *See id.* 440-42. Even assuming that Dr. Kulkarni's diagnoses permit an inference of total disability, "[w]here the evidence conflicts, the ALJ may choose whom to credit." *Masher v. Astrue*, 354 Fed. App'x. 623, 627 (3d Cir. 2009) (internal citations, quotations, alterations omitted). Here, the ALJ chose to credit other medical opinions, and he did so on the basis of the medical evidence presented therein, *see, e.g.*, *supra*, not his "own credibility judgments, speculation, or lay opinion." *Morales*, 225 F.3d at 317-18; *Plummer*, 186 F.3d at 429; *Frankenfield*, 861 F.2d at 408. In sum, the ALJ "was within his statutory authority" to accord "little weight" to Drs. Kulkarni, Vekhnis, and Freeman. *See Brown*, 649 F.3d at 196-97; *see also Mazzella v. Colvin*, 2014 WL 6908135, at *1 (M.D. Pa. Dec. 8, 2014).

The ALJ was likewise entitled to credit the state medical consultant and physical therapist. First, state agency medical opinions "merit significant consideration." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); SSR 96-6p ("Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) . . . ."). Contrary to a case where "[n]o physician suggested the activity [Appellant] could perform was consistent with the definition of light work set forth in the regulations," *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986), and where there is

15

no other medical evidence available to the ALJ, *see Frankenfield*, 861 F.2d 405, here the state expert found that Appellant can engage in activities consistent with the SSA's definition of light work. Second, after conducting perhaps the most extensive examination in the record, a "kinetmatic strength and work capacity protocol," *id.* 320-37, the physical therapist found that Appellant could perform "light category work" *despite* "demonstrate[ing] significant sub-maximum effort," *i.e.*, "a conscious [] effort to portray work ability below actual ability." *Id.* 335. The ALJ adopted the therapist's conclusion as to Appellant's limitations, notwithstanding the fact that Appellant overstated them. In other words, despite Appellant's "self-limiting strength effort," *id.*, which implies an even smaller "true residual functional deficit," *id.*, the ALJ included significant limitations in his residual functional capacity determination. Certainly, if there were grounds to disregard *any* limitations because of "strong symptom magnification," *id.*, then the ALJ did not commit reversible error by failing to conclude that Appellant has *greater* functional limitations.

In sum, as the ALJ stated, Drs. Kulkarni, Vekhnis, and Freeman are "contradicted by evidence that showed full strength and normal walking." A.R. 18. While ALJ could have provided a more thorough explanation, his decision is supported by substantial evidence. In making his residual functional capacity determination, the ALJ need not discuss "every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 Fed. App'x. 130, 133 (3d Cir. 2004). He must simply "explain [any] conciliations and rejections," as he did here. *Burnett*, 220 F.3d at 122. Moreover, "there is no format to which an ALJ must adhere when giving [his] reasoning," as long as his opinion permits "meaningful review," which it does. *Tompkins v. Astrue*, 2013 WL 1966059, at *13 (D.N.J. May 10, 2013) (quoting *Jones*, 364 F.3d at 505); *Stockett*, 216 F. Supp. 3d at 459. Accordingly, the Court affirms the ALJ's decision to credit and reject certain medical experts, as

well as his conclusion that the record does not support "a functional limitation severe enough to preclude [Appellant] from working." *Jones*, 954 F.2d at 128-29.

Appellant also takes issue with how the ALJ weighed her obesity. *See* Opp. Br., 9-15. "[A]n ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments." *Diaz*, 577 F.3d at 504. A single, cursory assurance that an ALJ has considered a claimant's obesity will be insufficient to satisfy this requirement. *See, e.g.*, *Sutherland v. Berryhill*, No. 3:17-00124, 2018 WL 2187795, at *9 (M.D. Pa. Mar. 6, 2018), *report and recommendation adopted sub nom*, 2018 WL 2183359 (M.D. Pa. May 11, 2018). On the other hand, evidence that an ALJ has "considered any additional and cumulative effects of obesity," coupled with an analysis of the relevant medical evidence, will be sufficient. *See, e.g.*, *Cooper v. Comm'r of Soc. Sec.*, 563 Fed. App'x. 904, 911 (3d Cir. 2014). Here, the ALJ adequately and explicitly contemplated the aggravating effects of Appellant's obesity, evaluating it within the context of the overall record and her other physical impairments. *See* A.R. 17; *Woodson v. Comm'r Soc. Sec.*, 661 Fed. App'x. 762, 765 (3d Cir. 2016). Accordingly, although a more thorough explanation would have been helpful, I find that substantial evidence supports the ALJ's determination in this regard. *See Hoyman v. Colvin*, 606 Fed. App'x. 678, 680 (3d Cir. 2015).

The same is true for Appellant's claim that the ALJ did not consider the side effects of her pain medication, such as fatigue, her self-reported severe pain and peripheral neuropathy, or her headaches. *See* Opp. Br., at 7, 17-18. The Court finds that substantial evidence supports the ALJ's decision not to include these limitations in his residual functional capacity assessment. As the ALJ explained, *see* A.R. 17-19, Appellant's claims are contradicted by the medical evidence, her course of treatment, and other evidence in the record, such as her testimony. *See Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("Allegations of pain and other subjective symptoms must be

supported by objective medical evidence."); *Arreizaga v. Berryhill*, No. 17-10631, 2019 WL 851581, at *8 (D.N.J. Feb. 21, 2019) ("An ALJ may discount a claimant's subjective complaints if they are inconsistent with the evidence of record.").

With respect to side effects from her medication, during multiple medical examinations between 2014 and 2018, Appellant never complained of and often affirmatively denied experiencing any. *See, e.g.*, A.R. 309, 502, 509, 511-12, 580, 582, 583, 585, 586, 591-92, 595, 597, 600, 601, 603, 606, 615, 618, 626, 630, 631, 634, 635, 637, 639, 643, 643, 645, 647, 650-51, 654, 655, 658, 659, 661, 662, 664. When Appellant applied for DIB, she likewise answered "none" when asked whether she suffers from side effects. *Id.* 260. As for her headaches, aside from isolated complaints in 2012 and 2014, *see* A.R. 439, Appellant denied having them at five appointments in 2014, eleven appointments in 2015; and nine appointments in 2016. *See* A.R. 466, 467, 469, 498, 501, 504, 507, 510, 513, 581, 584, 587, 590, 593, 596, 599, 602, 605, 608, 611, 614, 617, 620, 624, 628, 632, 635. The ALJ also explained that the record belies Appellant's claim of peripheral neuropathy: there is medical evidence showing that Appellant has a normal gait, can ambulate without difficulty, and is able to use her hands for a variety of daily tasks. *See* A.R. 18-19; 45-60. Finally, the ALJ explained that the medical record, *see* A.R. Ex. 2F, and Appellant's daily routine alike contradict the "intensity, persistence, and limiting effects" of her self-reported pain. *See Stockett*, 216 F. Supp. 3d at 462 ("In any case, Plaintiff's reports of her activities of daily living support a finding that no such limitations existed."); *Woodson*, 661 Fed. App'x. at 766-67 ("[E]vidence reasonably supports the ALJ's credibility finding, including [Appellant's] daily routines, including doing household chores, and driving locally . . . . Substantial evidence supports the ALJ's decision regarding the credibility of Woodson's subjective statements.").

As such, I find that the ALJ's determination in this regard is supported by substantial evidence. *See, e.g.*, *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 189 (3d Cir. 2007)

18

(stating that an ALJ's credibility determination should only be rejected in an "extraordinary case"); *Hoyman v. Colvin*, 606 Fed. App'x. 678, 681 (3d Cir. 2015) ("The credibility determinations of an administrative judge are virtually unreviewable on appeal.") (quoting *Bieber v. Dep't of the Army,* 287 F.3d 1358, 1364 (Fed. Cir. 2002)); *Blue Ridge Erectors v. Occupational Safety & Health Review Comm'n*, 261 Fed. App'x. 408, 410 (3d Cir. 2008) (refusing to overturn an ALJ's credibility determination unless it is "inherently incredible or patently unreasonable"); *see also St. George Warehouse, Inc. v. NLRB*, 420 F.3d 294, 298 (3d Cir. 2005).

B. *The ALJ's Hypotheticals to the Vocational Expert*

Appellant finally raises an objection to the ALJ's conclusion at Step four[1] that Appellant retains the limited functional capacity to perform her past relevant work as an administrative clerk. Appellant asserts that the ALJ "is required to propound a hypothetical containing all of the claimant's credibly established limitations" but failed to do so. Mot. to Remand, at 18. The Third Circuit does "not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). While a hypothetical omitting "medically undisputed evidence of scientific impairments . . . is not substantial evidence" on which an ALJ can rely, *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984), and such a hypothetical "must reflect *all* of a claimant's impairments," *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987), the Third Circuit has interpreted this directive to require an ALJ to "accurately convey" only a claimant's "*credibly established limitations*." *Rutherford*, 399 F.3d at 554. Even so, a limitation need not be "medically supported and otherwise uncontroverted in the record" to be credibly established. *Rutherford*, 399 F.3d at 554. "[L]imitations that are asserted by the claimant but that lack objective medical support may possibly be considered nonetheless credible." *Id.* As

---

[1]      Appellant calls this the ALJ's Step five determination, *see* Mot. to Remand, at 17-18, but this case was decided at Step four, *see* A.R. 19.

to such limitations, "the ALJ . . . should not reject a claimed symptom that is related to an impairment and is consistent with the medical record" even if "there is no objective medical evidence to support it." *Id.*; *see also* C.F.R. §929(c)(3).

With this framework in mind, I turn to the present case. The ALJ asked the vocational expert the following question: "Say a hypothetical individual is limited to light work [as Appellant is]. Could she return to . . . [her] past work [as an administrative clerk]?" A.R. 64. The vocational expert answered yes, but "only as [it] is described in the [Dictionary of Occupational Titles], not as the Claimant performed it." *Id.* The ALJ also asked the vocational expert whether a hypothetical person limited to either frequent or occasional "reaching, fingering, and handling, bilaterally" could return to past work. *Id.* If frequent, then the expert said yes, but if occasional, then no. *Id.* Finally, the ALJ asked whether Appellant could perform sedentary work if she were limited to occasional reaching, fingering, and handling. The vocational expert testified that Appellant could not, which supports a finding of disability for such a person. Although more specific hypotheticals would have been helpful, *see Burns v. Barnhart*, 372 F.3d 113, 122 (3d Cir. 2002) (directing the ALJ to describe in "greater specificity" the "type of limitations" from which claimants suffer); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (interpreting *Burns* to require, simply, "great specificity"), the Court finds that the ALJ's hypotheticals here constitute substantial evidence. Even though the ALJ found no manipulative limitation in his residual functional capacity assessment, a finding supported by substantial evidence, *see supra*, his second and third hypotheticals "adequately capture and recite" such a limitation. *Ramirez*, 372 F.3d at 555. Moreover, the ALJ was entitled to exclude Appellant's self-reported pain level, headaches, and the side effects of her medication, because he found them to be belied by other evidence in the record. *See supra*; *Rutherford*, 399 F.3d at 554 ("Limitations that are medically supported but are

20

also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence."). As such, the ALJ properly conveyed Appellant's impairments to the vocational expert.

## IV.    CONCLUSION

Because there is substantial evidence supporting the ALJ's residual functional capacity determination, and because the ALJ properly applied the SSA's five-step process for evaluating whether a claimant is entitled to disability benefits, the Court **DISMISSES** Appellant's appeal.

**DATED**:  August 18, 2020                                    /s/ Freda L.  Wolfson
                                                            Freda L.  Wolfson
                                                            U.S. Chief District Judge